UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCHWANDA ANN SMITH,                    Case No. 09-14231

          Plaintiff,              John Corbett O'Meara

vs.                                    United States District Judge

COMMISSIONER OF                        Michael Hluchaniuk
SOCIAL SECURITY,                       United States Magistrate Judge

          Defendant.

_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On October 28, 2009, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett O'Meara referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability insurance and supplemental security income benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 10, 11).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on August 22, 2006, alleging that she

became unable to work on August 1, 2005. (Dkt. 9, Tr. at 84). The claim was initially disapproved by the Commissioner on January 16, 2007. (Dkt. 9, Tr. at 48-51). Plaintiff requested a hearing and on January 23, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Daniel Dadabo, who considered the case *de novo*. In a decision dated March 3, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 9, Tr. at 35-47). Plaintiff requested a review of this decision on March 16, 2009. (Dkt. 9, Tr. at 4). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 8, 2009, denied plaintiff's request for review. (Dkt. 9, Tr. at 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 36 years of age at the time of the most recent administrative hearing. (Dkt. 9, Tr. at 11). Plaintiff's relevant work history included approximately five years as a fast-food worker, a grocery store cashier, and a day care aid. (Dkt. 9, Tr. at 109). In denying plaintiff's claims, defendant

Commissioner considered insulin dependent diabetes mellitus, hypertension, asthma, May 2006 tarsal tunnel nerve blocks, peripheral arterial disease, generalized anxiety and major depression, with psychotic features as possible bases of disability.  (Dkt. 9, Tr. at 41).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 1, 2006.  (Dkt. 9, Tr. at 40).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  (Dkt. 9, Tr. at 41).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her previous work.  (Dkt. 9, Tr. at 45).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 9, Tr. at 46).

B.    Plaintiff's Claims of Error

Plaintiff makes two claims of error.  First, plaintiff asserts that the ALJ's decision under the "B" criteria for evaluating mental impairments is not supported by the substantial evidence because plaintiff has "marked" limitations in at least three of the areas of functioning.  In addition, plaintiff argues that the ALJ failed to properly assess her credibility.

C.     Commissioner's Counter-Motion for Summary Judgment

The Commissioner argues that the ALJ independently evaluated all of the record evidence and cited to a considerable number of facts in the record showing that plaintiff did not have marked limitations.  The Commissioner also argues that Dr. Jain is not a "true" treating physician, given that he only examined plaintiff on one occasion, and plaintiff failed to show that Dr. Jain offered any opinion at all regarding her work-related mental functioning.  Finally, the Commissioner asserts that the ALJ's credibility determinations are well-supported by the record evidence.

## III.   DISCUSSION AND ANALYSIS

A.     Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Mental Impairment

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated.  This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the

case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id.* Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine

whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id.* The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id.* The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id.*

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: none, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. *Id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe,

and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 404.1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq.* If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

According to plaintiff, the ALJ erroneously found that plaintiff did not have a marked limitation in activities of daily living. Plaintiff claims that, despite pointing out plaintiff's "activities," what the ALJ should have concluded was that her activities show a restriction. For example, plaintiff's cleaning of her apartment is obsessive. As noted by Dr. Jain, "[s]he reports that sometimes she vacuums two or three times a day, even if she sees some small speck of dust or bread crumbs or so, she tries to vacuum the whole house rather than that place only." (Tr. 201). According to plaintiff, her shopping is another example of her restrictions. Dr.

Jain stated that "when she is shopping for herself and two or three other people and looking for their things and thinking constantly that she does not want to forget anything." (Tr. 201). Plaintiff also asserts that the ALJ ignored other activities of daily living in which plaintiff is restricted, such as grooming. She is slow in taking care of her personal needs due to the fact that she has trouble getting "motivated to shower etc." (Tr. 139), and Dr. Zerba noting plaintiff to have very poor grooming and hygiene. (Tr. 154). According to plaintiff, the ALJ limited his review of the records to Exhibit 3E (Tr. 115-122) and ignored Exhibit 6E (Tr. 135- 141) when plaintiff reported her condition worsening. (Tr. 136).

Plaintiff argues that a "marked limitation" can be present when a person can do a wide range of activity but has difficultly in performing certain tasks without supervision and that the ALJ ignored this definition of "marked limitation," even though the evidence supports that plaintiff has such difficulty. (Tr. 19, 21, 117, 119,136, 139, and 154). Thus, plaintiff argues that she has established a "marked limitation" in "activities of daily living."

According to the Commissioner, the ALJ independently examined the evidence relating to the B criteria, making citations to various sources in the record, noting that a considerable number of facts showed that plaintiff did not have marked limitations in her activities of daily living. For example, the Commissioner asserts that the ALJ accurately stated that plaintiff had consistently

been able to care for herself and her young son, and that when she applied for disability, she was had two more people in her household for whom she cared. (Tr. 41, 115-16, 154). The ALJ noted that plaintiff shopped, cleaned and cooked, and alleged no problem with self-care when she applied for disability, or even during the hearing. (Tr. 16, 41, 116-18). The Commissioner points out that plaintiff seeks to undermine the ALJ's decision merely by pointing to a 2008 report that she cleans obsessively and becomes stressed when she offers to shop for others outside her household, and to Dr. Zerba's observation that Plaintiff's grooming was poor. In doing so, the Commissioner argues, plaintiff ignores that no other physician ever commented on her grooming, and that she consistently reported being able to complete her activities of daily living. (Tr. 201-04). In addition, the Commissioner argues that there was no other evidence of obsessive behavior, and in any event, sometimes vacuuming the apartment two or three times a day or being overly-generous in performing favors for others does not rise to the level of a marked restriction in activities of daily living. Together with the opinion of the state agency psychiatrist that plaintiff had only mild restrictions in this area, there was substantial evidence on which the ALJ relied in reaching his conclusion that plaintiff did not have marked restrictions in activities of daily living.

    In the view of the undersigned, the ALJ relied on substantial evidence in reaching his decision that plaintiff was not restricted in her activities of daily

living.  Plaintiff's argument suggests that there is some presumption that her activities of daily living were markedly limited and that the ALJ must point to enough evidence to disprove her marked limitation in this area.  However, plaintiff bears the burden of establishing that her activities of daily living were so limited as to be "markedly" limited.  In the view of the undersigned, plaintiff has not offered a sufficient basis to overturn the ALJ's findings in this regard.

In regard to social functioning, plaintiff argues that the ALJ ignores the fact that Dr. Zerba reported that she has no friends.  (Tr. 154).  Additionally, the ALJ misquotes the evidence by claiming the part time job "involves extensive public and co-worker contact."  (Tr. 42).  According to plaintiff, there exists no evidence of extensive public or co-worker contact.  Rather, the testimony is that she works on a grill by herself.  (Tr. 12).  Plaintiff argues that the Listing of Impairment 12.00 requires a finding of marked limitation in a situation where a person is "highly antagonistic, uncooperative, or hostile ...".  While the ALJ acknowledged that plaintiff had a problem with supervisory criticism, according to plaintiff, she testified that she cannot work when the manager is present.  (Tr. 22).  Thus, according to plaintiff, she has marked limitation in social functioning.

According to the Commissioner, the ALJ relied on an abundance of evidence in support of his conclusion that plaintiff only had moderate restrictions in her social functioning.  (Tr. 42).  He accurately reported that plaintiff indicated that she

16

socialized with friends regularly (Tr. 42, 119), and had maintained a

part-time job that required extensive contact with others.  (Tr. 42).  While plaintiff

is correct that she did not testify that her McDonald's job involved extensive

contact, according to the Commissioner, "it stretches formalism beyond reasonable

limits to restrict the ALJ from drawing the reasonable conclusion that this position

brings Plaintiff into contact with others."  Even assuming that her job did not bring

her into contact with others the Commissioner asserts that plaintiff fails to show

why the ALJ should have found marked limitations in this area.  While she argues

that she has difficulty with supervision at work, but despite her testimony, she had

managed to maintain her employment, and "her complaints of not responding well

to being cursed at by her supervisor are more indicative of

normalcy than not."  (Tr. 22).  The Commissioner also points to the state agency

psychologist, who found only moderate restrictions in this area.  Thus, the

Commissioners maintains that the record contains substantial evidence to support

the ALJ's decision.

In the view of the undersigned, plaintiff again attempts to argue that the

Commissioner must prove that she is not markedly limited in social functioning.

Even accepting plaintiff's claims (that she has no friends, she has trouble "getting

going" when her supervisor is present) as true, plaintiff does not explain why this

means she is, in fact, "markedly limited" in social functioning as opposed to mild

or moderately limited.  That is, plaintiff seems to suggest that *any* evidence of a limitation in social functioning *must* mean that she is markedly limited.  This is simply not the case.  Thus, the undersigned finds no basis to disturb the ALJ's conclusions.

Finally, plaintiff also argues that the ALJ ignores a tremendous amount of evidence of her inability to concentrate.  (Tr. 19, 117, 119, 136, 154).  Plaintiff argues that this "overwhelming evidence shows a marked limitation in concentration."  The Commissioner, on the other hand, argues that although plaintiff made complaints in this area, every mental status exam was essentially adequate.  (Tr. 42).  The ALJ also noted that plaintiff was able to assist her husband with his paperwork and took responsibility for making arrangements for her brother.  (Tr. 42).  He noted that her thought processes were clinically normal and her orientation has been intact over the course of her efforts to obtain benefits.  (Tr. 42).  According to the Commissioner, plaintiff does not dispute any of this, and "simply makes the bald statement that the evidence shows a marked limitation in concentration without citing to any evidence or showing how the ALJ committed any error.

The undersigned agrees with the Commissioner.  Plaintiff has established that she has some difficulties with concentration, but fails to show that there is substantial evidence in the record sufficient to establish a marked limitation in this

area.  More importantly, the substantial evidence in the record supports the ALJ's determination.

    D.    <u>Credibility</u>

The ALJ's credibility finding is entitled to deference and should not be disregarded given the ALJ's opportunity to observe the plaintiff's demeanor. However, if the ALJ rejects the testimony of the plaintiff as not being credible, the ALJ must clearly state the reasons for that conclusion.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Not all impairments deemed "severe" in step two must be included in the hypothetical.  *Griffeth*, 217 Fed.Appx. at 429.  "The rule that a hypothetical question must incorporate all of

the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

SSR 96-7p also provides guidance on the factors to be considered when evaluating credibility:

> Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:

      * The medical signs and laboratory findings;

      * Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

      * Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The adjudicator must then evaluate all of this information and draw appropriate inferences and conclusions about the credibility of the individual's statements. *Id*.

      Plaintiff's argument regarding the alleged defects in the ALJ's credibility argument are merely a rehash of her already rejected arguments regarding her mental impairments. In addition, plaintiff argues that Dr. Jain's assessments support's plaintiff's statements and therefore, the ALJ improperly found her not totally credible. Again, this appears to be a rehash of plaintiff's mental impairment arguments and does not provide a basis for overturning the ALJ's credibility determinations.

      As the Commissioner explains, the ALJ explained why he did not fully credit plaintiff's testimony. First, he noted that her allegations of disability had undergone a fundamental shift, from initially being based in allegations of physical limitations to later being purely based on mental limitations. (Tr. 44). The ALJ

also noted that the evidence of her physical limitations did not corroborate her

original allegations, and that this reflected poorly on her credibility.  (Tr. 42-44).

The ALJ also noted that her allegations of work-related mental limitations were not

supported by the totality of the evidence.  (Tr. 41-42, 44-45).  And he took stock of

the fact that she had a criminal history for embezzlement, and of how this act led to

her termination from work in

January 2006, which contradicted her claim that her disability onset is what

prevented her from working.  (Tr. 45).  In summary, the undersigned agrees with

the Commissioner that the ALJ reasonably evaluated plaintiff's credibility, and his

determination that he could not credit all of her allegations is supported by

substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk

Date:  February 15, 2011               Michael Hluchaniuk
                                       United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Armin G. Fischer, William L. Woodard, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
darlene_chubb@mied.uscourts.gov
(810) 341-7850

Report and Recommendation
Cross-Motions for Summary Judgment
*Smith v. Comm'r*; Case No. 09-14231
